United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

UNITED STATES OF AMERICA,

Plaintiff,

v.

HIEN MINH NGUYEN,

Defendant.

Case No. 15-cr-00203-BLF-1

**ORDER RE BENCH TRIAL ON STIPULATED FACTS**

[Re: ECF 119]

The United States of America (the "Government") indicted Defendant Hien Minh Nguyen for bank fraud and tax evasion. On August 9, 2015, Defendant entered an open plea to the four tax evasion charges. ECF 90. The remaining fourteen bank fraud charges, Counts 1 through 14, were set for a stipulated-facts bench trial. Although the parties stipulated to facts on the counts of bank fraud, the parties disagree as to whether the stipulated facts are sufficient to support a conviction under 18 U.S.C. § 1344. Having conducted a bench trial on the stipulated facts on February 21, 2017, and reviewed the parties' stipulated facts and their trial briefs, the Court renders the following Findings of Facts and Conclusions of Law, pursuant to Federal Rule of Criminal Procedure 23(c). For the reasons set forth below, the Court hereby finds that the stipulated facts fully support convictions under 18 U.S.C. § 1344(1) and (2) and the Court will find Defendant guilty of these charges when he returns to Court on March 21, 2017.

## I. STIPULATED FACTS

The following facts were submitted to the Court by the parties in their joint First Stipulations of Facts for Trial. Stip. Facts, ECF 124. Based on the stipulation of the parties, the Court makes the following findings of fact.

1. From 2005 through 2011, the defendant was a Catholic priest for the Diocese of San

Jose ("the Diocese"); pastor of St. Patrick's Church ("St. Patrick's"); and the director of the Vietnamese Catholic Center, which is also known as the Trung Tam Cong Giao ("VCC").

2. While employed as a priest in the Diocese, the defendant received from parishioners cash donations which the parishioners intended to be for the benefit of the Church, St. Patrick's, and/or the VCC. During each of the years 2008 through and including 2011, defendant deposited some of these cash donations into his own personal bank account.

3. From 2005 through 2011, the defendant had signatory authority over the VCC's Bank of America accounts. During each of the years 2007 through and including 2010, defendant signed checks drawn on VCC's Bank of America accounts to pay his personal expenses.

4. While employed as a priest in the Diocese, the defendant received from parishioners checks made payable to the VCC, including the following:

| Parishioner | Parishioner Bank Account | Check No. | Check Amount | Deposit Date | Count |
|---|---|---|---|---|---|
| K.N. | Bank of America account no. 8385 | 1043 | $1,500 | 9/28/05 | 1 |
| K.N. | Bank of America account no. 8385 | 1006 | $500 | 2/2/06 | 2 |
| K.N. | Bank of America account no. 8385 | 1155 | $1,000 | 5/8/06 | 3 |
| K.N. | Bank of America account no. 8385 | 1215 | $500 | 10/31/06 | 4 |
| K.N. | Bank of America account no. 8385 | 1393 | $300 | 12/18/07 | 5 |
| H.N. | California Savings and Loan account no. 5100 | 1106 | $1,000 | 10/3/05 | 6 |
| H.N. | California Savings and Loan account no. 5100 | 1119 | $700 | 1/23/06 | 7 |
| H.N. | Citibank account no. 9806 | 0102 | $500 | 10/31/06 | 8 |
| H.N. | Washington Mutual Bank account no. 7233 | 1050 | $1,000 | 6/4/07 | 9 |
| B.T. | Wells Fargo Bank account no. 1726 | 2484 | $1,000 | 10/3/05 | 10 |
| C.N. | Washington Mutual Bank account no. 4010 | 0328 | $3,000 | 8/15/06 | 11 |
| K.T.T. | Bank of America account no. 5803 | 1477 | $3,000 | 9/28/06 | 12 |
| K.T.T. | Bank of America account no. 4721 | 1005 | $2,500 | 10/15/07 | 13 |
| J.T.N. | Bank of America account no. 1573 | 2341 | $2,500 | 11/14/07 | 14 |

5. Each of the checks listed in paragraph 4, above (the "Checks"), were made payable to the VCC, and the parishioners who wrote them intended and believed that the funds backing them would be used for the benefit of the VCC, and the parishioners gave them to defendant for that purpose.

6. From 2005 through 2011, although the defendant had signatory authority over the VCC's Bank of America accounts, he was not authorized by the Diocese, the Church, St. Patrick's, the VCC, or any other individual or entity, to deposit checks payable to the VCC into his own personal bank account, and he knew he was not authorized to do so.

7. The defendant did not deposit any of the Checks into the VCC's Bank of America accounts, or into any other bank account affiliated with the Church, St. Patrick's, or the VCC.

8. Instead, the defendant intentionally presented each of the Checks to Wells Fargo Bank for deposit into his personal Wells Fargo Bank account ending in 8817, thereby intentionally misrepresenting to the Bank that he was authorized to deposit checks payable to the VCC into his own personal bank account, which he was not.

9. Before depositing each of the Checks, the defendant intentionally wrote his personal bank account number on the back of each of the Checks, and also added his signature to the back of each of the Checks.

10. The defendant did not forge any signature on any of the Checks, nor did he alter any of the Checks in any way, other than writing his own personal bank account number on and signing the back of each of the Checks.

11. Wells Fargo Bank accepted each of the Checks for deposit, and credited the defendant's personal bank account with the funds backing them. In so doing, Wells Fargo Bank was exposed to a risk of harm in the form of potential civil liability to the parishioners or their banks.

12. Based on the deposit of each of the Checks into the defendant's personal bank account, the donating parishioners' banks (Bank of America, California Savings and Loan, U.S. Bank National Association, Washington Mutual Bank, and JP Morgan Chase Bank) each debited the parishioners' accounts by the amounts listed on each Check. In so doing, each of the parishioners' banks was exposed to a risk of harm in the form of potential civil liability to the parishioners.

13. The defendant did not use any of the money backing any of the Checks for the benefit of the Church, St. Patrick's, the VCC, or the Church's parishioners.

14. During the entire period 2005 through 2008, the following financial institutions were insured by the Federal Deposit Insurance Corporation:

a. Wells Fargo a/k/a Wells Fargo Bank, NA

b. Bank of America a/k/a Bank of America, NA

c. California Savings and Loan a/k/a California Savings and Loan Association, A Federal Association a/k/a California Savings Bank a/k/a Pacific National Bank

d. U.S. Bank a/k/a U.S. Bank National Association

e. Washington Mutual Bank a/k/a Washing Mutual Bank, FSB

f. JP Morgan Chase Bank a/k/a JP Morgan Chase Bank, NA

g. Citibank a/k/a Citibank, NA

## II. 18 U.S.C. § 1344

18 U.S.C. § 1344 provides:

"Whoever knowingly executes, or attempts to execute, a scheme or artifice--

(1) to defraud a financial institution; or

(2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;

shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both."

## III. CONCLUSIONS OF LAW

Subsection (1) of 18 U.S.C. § 1344 makes it a crime "knowingly [to] execut[e] a scheme . . . to defraud a financial institution," such as a federally insured bank. *Shaw v. United States*, 137 S. Ct. 462, 465 (2016). While requiring "a scheme to defraud a financial institution," the subsection demands neither a showing of ultimate financial loss nor a showing of intent to cause financial loss. *Id.* at 467. Rather, as long as the defendant "misled the bank in order to obtain

funds" held in an account owned by the bank, such conduct qualifies as a scheme proscribed by subsection (1). *Id.* at 466.

In comparison, subsection (2) of 18 U.S.C. § 1344 makes it a crime "to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises." *Id.* at 468-69. In contrast to subsection (1), subsection (2) does not demand that a defendant have a specific intent to deceive a bank, but adds a "means" component for obtaining bank funds – "by means of false or fraudulent pretenses, representations, or promises." *Loughrin v. United States*, 134 S. Ct. 2384, 2389 (2014). Nonetheless, "the two subsections overlap substantially but not completely." *Shaw*, 137 S. Ct. at 468. For example, making a false representation to a bank in order to obtain property in the custody of that bank would violate both subsections (1) and (2). *Id.* However, subsection (2) could apply "to a circumstance in which a shopper makes a false statement to a department store cashier in order to pay for goods with money 'under the custody or control of a financial institution,'" while subsection (1) might not apply to such a situation because the misrepresentation is made to a non-bank custodian. *Id.* at 469; *Loughrin*, 134 S. Ct. at 2387 (upholding a conviction under subsection (2) where the defendant presented altered or forged checks to a retail store to purchase merchandise and then returned the goods to the store for cash).

Keeping in mind the overlap and the differences between the two subsections of 18 U.S.C. § 1344, the Court addresses below whether Defendant is guilty under each subsection in turn.

**A. 18 U.S.C. § 1344(1)**

The elements of bank fraud under subsection 1344(1) are:

1. Defendant knowingly executed a scheme to defraud a financial institution as to a material matter;
2. Defendant did so with the intent to defraud the financial institution; and
3. The financial institution was insured by the Federal Deposit Insurance Corporation.

Govt. Br. 6, ECF 119 (citing Ninth Cir. Model Crim. Jury Instr., § 8.125 (2010) (modified)).

It is not disputed that the financial institutions referenced in the stipulated facts are insured

by Federal Deposit Insurance Corporation. Stip. Facts ¶ 14. However, the parties disagree whether there was a scheme to defraud a financial institution and intent to defraud the financial institution.

The Government contends that to satisfy this subsection, it is not required to prove that Defendant intended to cause any financial harm to the bank, only that Defendant intentionally executed "a scheme" to deceive the bank. Govt. Br. 6 (citing *Shaw v. United States*, 137 S. Ct. 462, 466-67 (2016)); Reply 2, ECF 122. According to the Government, misleading a bank to obtain funds from an account, knowing that the bank holds the funds in that account, qualifies as such "a scheme." *Id.* at 7 (citing *Shaw*, 137 S. Ct. at 466). The Government also discusses cases from other circuits which found that intentionally depositing checks into an incorrect account was bank fraud. *Id.* at 7-8 (citing *United States v. Ponec*, 163 F.3d 486, 487 (8th Cir. 1998); *United States v. McDonald*, 209 F. App'x 748, 751 (10th Cir. 2006)).

Defendant argues that there are no facts establishing that the check deposits were part of a scheme, that he had intent to defraud a financial institution, or that he solicited donations from parishioners. Def. Br. 3, ECF 117. Although he "intentionally" deposited the checks, Defendant contends that this admission does not amount to "a scheme." *Id.* Defendant also asserts that in cases where courts have found a "scheme to defraud," the facts concerned forged documents or other conduct more than just signing and writing an account number on the check. Reply 6, ECF 121. According to Defendant, his conduct at best is a scheme to defraud the parishioners but not Wells Fargo Bank. *Id.* at 7.

The Supreme Court in *Shaw* recently interpreted subsection 1344(1), finding that "a scheme fraudulently to obtain funds from a bank depositor's account normally is also a scheme fraudulently to obtain property from a 'financial institution,'" regardless of whether the bank suffered financial harm. 137 S. Ct. at 466. In *Shaw*, defendant, Lawrence Shaw, used information belonging to a Bank of America customer, Stanley Hsu, to transfer funds from Hsu's account to accounts at other institutions from which Shaw could obtain Hsu's funds. *Id.* at 466. Shaw was later convicted of violating subsection 1344(1). *Id.* On appeal, Shaw argued that his scheme was directed to obtaining Hsu's property and not the bank's, that he had no intent or purpose to cause

the bank any financial harm, and that he did not know that the bank had any property interest in Hsu's account. *Id.* at 466-68. The Supreme Court rejected each and every one of Shaw's arguments. *Id.* In upholding the conviction, the Supreme Court held that a scheme to obtain funds from a bank depositor's account is also a scheme to obtain property from a financial situation, that the statute does not require a bank to suffer financial harm, and that the bank possessed a property interest in Hsu's account. *Id.* at 466-67.

Based on the holding in *Shaw*, the facts here establish that Defendant executed a scheme to defraud and had intent to defraud the financial institution. The parishioners wrote each of the checks listed in the stipulated facts made payable to VCC, intending and believing that the funds backing the checks would be used for the benefit of the VCC. Stip. Facts ¶ 5. The parishioner's funds backing the checks were held by FDIC-insured banks, that also had property rights in those funds. *See Shaw*, 137 S. Ct. at 466. Defendant then wrote his personal bank account number on the back of each of the checks, knowing full well that he did not have authority to deposit those checks into his personal account. Stip. Facts ¶ 6. Defendant's personal bank account number written on the checks and his endorsement intentionally misrepresented to Wells Fargo Bank his authority to obtain those funds and caused Wells Fargo Bank to deposit those funds into his personal bank account. *Id.* ¶¶ 8-11. Defendant's scheme deprived Wells Fargo Bank, and the banks from which the funds were drawn of their property rights. *See Shaw*, 137 S. Ct. at 466. These banks were then exposed to liability to other banks or to the parishioners who wrote the checks. Stip. Facts ¶ 11. Similar to the defendant in *Shaw*, who argued that his scheme was "designed to obtain only a bank *customer's* property" and not the "bank's *own* property," Defendant here claims that he might have defrauded the parishioners but not Wells Fargo. Reply 6; 137 S. Ct. at 466 (emphasis in original). Defendant's contention is without merit given that *Shaw* is directly on point, holding that a scheme to obtain funds from a bank depositor's account is also a scheme to obtain property from a financial situation under subsection 1344(1). *See Shaw*, 137 S. Ct. at 466 (finding that "Shaw's scheme to cheat Hsu was also a scheme to deprive the bank of certain bank property rights"). Defendant did not discuss *Shaw*, let alone how this case can be distinguished from *Shaw*.

The Eight Circuit was confronted with similar facts and found a violation under § 1344. *United States v. Ponec*, 163 F.3d 486, 487 (8th Cir. 1998). The defendant in *Ponec* was an employee of a company and had possession of a number of checks made payable to his company. *Id.* He deposited these checks into his personal bank account by writing his own bank account number on blank deposit slips, although he had no authority to divert those funds to his personal account. *Id.* On appeal, the defendant argued that there was "no scheme to defraud" given that he did not make any false statement to the bank. *Id.* at 488. The defendant relied on *Williams v. United States*, contending that a check could not amount to a factual assertion. *Ponec*, 163 F.3d at 488 (citing *Williams*, 458 U.S. 279, 284 (1982)). The court rejected that argument and found that *Williams* did not apply. Instead, the court found that "[w]hen Mr. Ponec wrote his own account number on the deposit tickets, he was falsely representing that he had the right to put these checks into his own account," which was a scheme to defraud. *Ponec*, 163 F.3d at 489.

The Tenth Circuit also upheld a conviction under subsection 1344(1) under circumstances similar as those here. *United States v. McDonald*, 209 F. App'x 748, 749 (10th Cir. 2006). The defendant in *McDonald* told her victims that she would help them "acquire a $1 million business loan from Mountain America Credit Union ("MACU") if they put up a ten percent deposit." *Id.* at 749. After receiving checks for the ten percent payment, the defendant deposited the money in her personal account instead of using it to acquire a business loan on behalf of the victims. *Id.* at 750. Rejecting the defendant's argument on sufficiency of evidence, the court affirmed the conviction under § 1344(1) because "McDonald made implicit false misrepresentations to MACU that she had authority" to deposit the checks into her personal bank account. *Id.* at 751.

Defendant urges this Court not to adopt the reasoning of *Ponec* and *McDonald*. Reply 3-4. According to Defendant, *Ponec* is an out-of-circuit opinion that is contrary to the Supreme Court holding in *Williams* and McDonald is an unpublished out-of-circuit opinion that relied on another tenth circuit case with distinguishable facts. *Id.* at 4. Although this Court is not bound by *Ponec* and *McDonald*, their reasoning is persuasive in that "a scheme" to defraud can include misrepresenting one's authority to deposit a check into a personal account when such authority does not exist. *Williams* is also distinguishable from the case here, which held that 18 U.S.C. §

1014 did not reach the conduct of writing a "bad check," which is not the case presented here. The Court will discuss *Williams* more in depth later below in connection with subsection 1344(2).

Although Defendant argues that endorsement on a check and presenting it for deposit cannot amount to "a scheme," the facts here establish more than just an endorsement and a presentation for deposit. Def. Br. 3; Reply 6. For example, Defendant knew that the parishioners wrote the checks payable to VCC, intending that the funds be used for the benefit of the VCC, and that he had no authority to deposit these checks into his personal account. Stip. Facts ¶¶ 4-6 Yet, he wrote his personal bank account number on the checks, intending to misrepresent his authority to divert the funds, and causing Wells Fargo to deposit the funds in his personal account. *Id.* ¶¶ 8-11. These facts are analogous to those in *Ponec* and *MacDonald*, both of which upheld the bank fraud conviction.

Even though in a number of cases cited by Defendant, the "schemes" involve forgery, altered checks, or other wrongful conduct different from Defendant's, the different conduct is a mere distinction without a difference. As long as there is "a scheme to defraud a financial institution," the statute does not discriminate between one specific means to execute that scheme and another means, and the authorities provided by Defendants do not suggest otherwise. As Defendant himself noted, "[t]he phrase 'scheme or artifice to defraud' simply requires a design, plan, or ingenious contrivance or device to defraud," and facts here do establish a design or a plan to defraud. Reply 5 (citing *United States v. Hill*, 197 F.3d 436, 444 (10th Cir. 1999)).

As to Defendant's argument that there are no facts establishing that he solicited donations from parishioners for the benefit of the VCC, the Court finds that the elements of bank fraud under subsection 1344(1) are still met even if the facts do not establish that he solicited donations from parishioners. It is not disputed that the checks were made payable to the VCC, and the parishioners who wrote them intended and believed that the funds backing them would be used for the benefit of the VCC. Stip. Facts ¶ 2. Moreover, Defendant did not use any of the money backing any of the checks for the benefit of the Church, St. Patrick's, the VCC, or the Church's parishioners. *Id.* ¶ 13. Instead, he deposited those checks into his personal bank account even though he was not authorized to do so. *Id.* ¶ 8. These and other facts discussed above are

United States District Court
Northern District of California

sufficient to meet the elements of subsection 1344(1).

In conclusion, the Court finds that the elements of 18 U.S.C. § 1344(1) are satisfied beyond a reasonable doubt by the stipulated facts. Defendant's signing of the checks, writing his personal account number on the checks, presenting the checks to Wells Fargo Bank, the intentional misrepresentation that he was authorized to deposit those checks payable to VCC into his personal account, and Wells Fargo Bank's acceptance of the checks for deposit into his personal account are sufficient to meet the element of "knowingly executed a scheme to defraud a financial institution as to a material matter" and the element of "the intent to defraud the financial institution." *See* Stip. Facts ¶¶ 8-9, 11-13.

**B. 18 U.S.C. § 1344(2)**

The elements of bank fraud under subsection 1344(2) are:

1. Defendant knowingly carried out a scheme or plan to obtain money or property from the financial institution by making false statements or promises;
2. Defendant knew that the statements or promises were false;
3. The statements or promises were material; that is, they had a natural tendency to influence, or were capable of influencing, a financial institution to part with money or property;
4. Defendant acted with the intent to defraud; and
5. The financial institution was federally chartered or insured.

Govt. Br. 9 (citing Ninth Cir. Model Crim. Jury Instr., 8.127 (2010) (modified)).

Like subsection (1) above, it is not disputed that the financial institutions referenced in the stipulated facts are insured by Federal Deposit Insurance Corporation. Stip. Facts ¶ 14. However, the parties disagree as to other elements.

The Government argues that subsection 1344(2) is violated when a defendant acts with an objective of obtaining property under a bank's control by way of a false representation made either to the bank or someone else. Govt. Br. 9 (citing *Loughrin v. United States*, 134 S. Ct. 2384, 2389 (2014)). The Government asserts that subsection 1344(2) imposes no requirement that the defendant intends to defraud the bank, or even that the bank is exposed to a risk of loss. *Id.* (citing

*Loughrin*, 134 S. Ct. at. 2389, 2395 n.9). According to the Government, other circuits have found a violation of subsection 1344(2) when a defendant misrepresents to a bank his or her authority to deposit the checks into a personal account, like the facts presented here. *Id.* at 9-10 (citing *McDonald*, 209 F. App'x at 751; *United States v. Morgenstern*, 933 F.2d 1108, 1113 (2d Cir. 1991)).

Defendant counters that his conduct here does not constitute a false statement or misrepresentation under subsection 1344(2). Def. Br. 3-4. Specifically, Defendant argues that he had authority to sign checks made out to the VCC, did not alter the checks, did not forge any signature, and made no representations to the Wells Fargo Bank's tellers. *Id.* at 4. According to Defendant, the tellers mistakenly deposited the checks and credited Defendant's account even though the checks were made out to the VCC. *Id.* As such, Defendant notes that the issue is whether writing his personal account number on the checks constitutes a false or fraudulent pretense, as required by subsection 1344(2). *Id.* Defendant argues that merely writing his personal account number on the check, without more, does not, and urges this Court not to expand the scope of this bank fraud statute. *Id.* at 4-6 (citing *Williams v. United States*, 458 U.S. 279 (1982)).

As noted above, the two subsections, 1344(1) and (2), overlap substantially but not completely, and conduct falling within the scope of subsection (1) can also be covered by subsection (2). *Shaw*, 137 S. Ct. at 468. Subsection 1344(2) requires that a defendant intends to obtain property under the custody or control of a financial institution "by means of false or fraudulent pretenses, representations, or promises." *Loughrin v. United States*, 134 S. Ct. 2384, 2389 (2014). The Supreme Court in *Loughrin* also held that subsection 1344(2) can cover deception of a non-bank custodian with a goal to obtain a bank's property, underscoring that "nothing in [subsection 1344(2)] demands that a defendant have a specific intent to deceive a bank." *Id.* at 2389. The Tenth Circuit in *MacDonald*, a case discussed above, also affirmed the conviction of the defendant under subsection 1344(2) in addition to subsection (1), reasoning that the "misrepresentation to MACU that she had the authority to deposit the two checks into her personal account constituted a scheme to obtain funds under the custody of MACU 'by means of

false or fraudulent pretenses, representations or promises.'" 209 F. App'x at 751 (citing 18 U.S.C. § 1344(2)). The situation here is no different. As discussed above, Defendant misrepresented to Wells Fargo Bank that he had authority to deposit the checks made payable to VCC into his personal account, knowing that he had no such authority. Stip. Facts ¶¶ 8-9, 11. Because of this misrepresentation to Wells Fargo Bank, Wells Fargo deposited the checks into Defendant's personal account. As long as Defendant had intent to defraud so to obtain property under the custody of the bank, the scheme is proscribed by subsection 1344(2). *See Loughrin*, 134 S. Ct. at 2389.

Relying on *Williams*' holding that "a check is not a factual assertion at all, and therefore cannot be characterized as 'true' or 'false,'" Defendant argues that the facts here are insufficient to meet the requirements of subsection 1344(2). Def. Br. 5 (citing 458 U.S. at 284). In *Williams*, the defendant was convicted under 18 U.S.C. § 1014 for "check-kiting." 458 U.S. at 282. "Check-kiting" involves writing a check from a first bank account that is not supported by sufficient funds, and depositing the check in a different account in a second bank and vice versa, and repeating this process such that the several-day period required for processing the check essentially results in an "interest-free loan for an extended period of time." *Id.* at 281 n.1. The Supreme Court concluded that the conviction could not stand because the defendant's "course of conduct did not involve the making of a 'false statement'" because "a check is not a factual assertion at all." *Id.* at 284. The government argued on appeal in *Williams* that the defendant misrepresented that "he currently has funds on deposit sufficient to cover the face value of the check" and thus the defendant misrepresented the amount of funds available to be drawn. *Id.* at 285-86. The Supreme Court refused to adopt the government's expansive reading of the statute to cover "writing bad checks," which was already "addressed in comprehensive fashion by state law." *Id.* at 286-87.

Defendant overstates the holding of *Williams*. The *Williams* court was concerned with the Government's improper overreach in applying 18 U.S.C. § 1014 to criminalize conduct that only involves writing a check where the account has insufficient funds to cover the check. The Court does not interpret *Williams* to support the proposition that any writing on a check categorically cannot be a misrepresentation. In fact, Defendant himself also agrees that in cases "where the

defendants engaged in some conduct other than signing a check," such as forgery or check alteration, the cases are properly distinguishable from *Williams*. Reply 8-9; *see also Loughrin*, 134 S. Ct. at 2393 (noting that "a forged or altered check" can satisfy the false pretense element of subsection 1344(2)). The Court finds that Defendant's writing of his personal account number together with his signature on checks made payable to VCC, although truthful, was used for an unlawful purpose, and thus it is "conduct other than signing a check." Stip. Facts ¶ 8-9. That Defendant intentionally misrepresented to Wells Fargo that he was authorized to deposit these checks into his personal bank account is also such "conduct other than signing a check." *Id.* ¶¶ 8, 9, 11.

Moreover, the *Williams* court's statement that "a check is not a factual assertion at all" was made in relation to the value written on the check, so it has limited application to the case here. Specifically, the court held that the law does not compel a check writer to know and to truthfully represent that the amount of funds in the bank account is sufficient. *Williams*, 458 U.S. at 284. Rather, the value written on the check "serve[s] only to direct the drawee banks to pay the face amounts to the bearer, while committing [the check writer] to make good the obligations if the banks dishonor[] the drafts." *Id.* In contrast to the situation in *Williams*, the issue of whether the check writers were making a representation of sufficient fund is not a concern here. Accordingly, this case is distinguishable from *Williams*.

As to Defendant's assertion that Wells Fargo Bank's tellers "mistakenly deposited [the checks] and credited Hien's account," this assertion clearly misstates the stipulated facts. Def. Br. 4. Defendant cites paragraph 11, which states: "Wells Fargo Bank accepted each of the Checks for deposit, and credited the defendant's personal bank account with the funds backing them. In so doing, Wells Fargo Bank was exposed to a risk of harm in the form of potential civil liability to the parishioners or their banks," ignoring paragraph 8, which establishes that "the defendant intentionally presented each of the Checks to Wells Fargo Bank for deposit into his personal Wells Fargo Bank account ending in 8817, thereby intentionally misrepresenting to the Bank that he was authorized to deposit checks payable to the VCC into his own personal bank account, which he was not." Thus, Wells Fargo's act of depositing the checks into Defendant's account was the

United States District Court
Northern District of California

result of Defendant's intentional misrepresentation, not a "mistake" by the bank tellers.

In conclusion, the Court finds that the elements of 18 U.S.C. § 1344(2) are satisfied beyond a reasonable doubt. Defendant's signing of the checks, writing his personal account number on the checks, presenting the checks to Wells Fargo Bank, and the intentional misrepresentation that he was authorized to deposit checks payable to VCC into his personal account, are stipulated facts that meet the element of "knowingly carried out a scheme or plan to obtain money or property from the financial institution by making false statements or promises," and the element of "acting with the intent to defraud." *See* Stip. Facts ¶¶ 8-9. Defendant also knew that he had no authority to deposit checks payable to the VCC into his personal bank account, meeting the element of knowing "that the statements or promises were false." *Id.* ¶ 6. Wells Fargo Bank's acceptance of the checks for deposit into his personal account further evidences that Defendant's representations "were material; that is, they had a natural tendency to influence, or were capable of influencing, a financial institution to part with money or property." *Id.* ¶¶ 11-13.

## IV. ORDER

The Court concludes that the stipulated facts are sufficient to prove beyond a reasonable doubt that Defendant knowingly executed, or attempted to execute, a scheme or artifice to defraud a financial institution; or to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises, in violation of 18 U.S.C. § 1344(1) and 1344(2). Accordingly, the Court will find Defendant GUILTY of Counts 1 through 14 when he returns to Court on March 21, 2017.

Dated: March 7, 2017

BETH LABSON FREEMAN
United States District Judge